# United States Court of Appeals
# for the Federal Circuit

---

**BSG TECH LLC,**
*Plaintiff-Appellant*

v.

**BUYSEASONS, INC.,**
*Defendant-Appellee*

**RAKUTEN COMMERCE, LLC,**
*Defendant*

---

2017-1980

---

Appeal from the United States District Court for the Eastern District of Texas in Nos. 2:16-cv-00529-RWS, 2:16-cv-00530-RWS, Judge Robert Schroeder, III.

---

Decided: August 15, 2018

---

DAVID R. BENNETT, Direction IP Law, Chicago, IL, argued for plaintiff-appellant.

RICARDO BONILLA, Fish & Richardson PC, Dallas, TX, argued for defendant-appellee. Also represented by DAVID BRANDON CONRAD, NEIL J. MCNABNAY.

---

Before REYNA, WALLACH, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

BSG Tech LLC sued BuySeasons, Inc. for infringement of several patents related to systems and methods for indexing information stored in wide access databases. BuySeasons sought dismissal of the suit based on its contention that none of the asserted patent claims were patent-eligible under 35 U.S.C. § 101. The district court ultimately agreed with BuySeasons and held all asserted claims invalid as ineligible under § 101. We agree with the district court that the asserted claims are ineligible and, thus, affirm.

I

All three of BSG Tech's asserted patents, U.S. Patent Nos. 6,035,294, 6,243,699, and 6,195,652, have substantially overlapping specifications and are directed to a "self-evolving generic index" for organizing information stored in a database. '294 patent col. 3 ll. 24–25. This indexing software organizes information about various items using classifications, parameters, and values. *Id.* at col. 4 ll. 28–42, col. 6 ll. 38–61. For example, information about a car could be organized as a series of classifications, such as a first "Automobile" classification, a second "Used Vehicle" classification, and a third "Sports Utility Vehicle" classification. *Id.* at col. 4 ll. 31–34. Alternatively, items could be described using parameters and values. A parameter is a set of qualities that an item could possess, while a value is the specific quality that the item possesses. For instance, items in the database could be classified using the "color" parameter, while each item in the database will have a specific color value like "red" or "blue." *Id.* at col. 3 ll. 30–45.

Prior art indices also organized information using classifications, parameters, and values. According to the patents' specifications, prior "specialty indices" organized information about specific types of products or services. For example, a real estate specialty index could use

property classifications like commercial or residential; organize properties using parameters like location or square footage; and store data corresponding to the values of those parameters. *Id.* at col. 1 ll. 49–57. Database users could more finely control their searches for particular data entries by using parameters and values to limit search results. *Id.* at col. 2 ll. 60–62. The specifications also describe "hierarchical indices" that sorted information about products and services by tiers of increasingly narrow classifications. *Id.* at col. 2 ll. 30–42. Using this type of index, a user searching for the geographical location of a service could find services in Los Angeles by continuously narrowing from broader categories like North America, United States, California, and Southern California. *Id.* at col. 2 ll. 39–42.

BSG Tech alleges that these prior art indices suffered from several shortcomings. Specialty indices enabled refined searching through use of parameter combinations, but the parameters used to describe one item were often inapplicable to other items. *Id.* at col. 1 ll. 60–67. For example, parameters that helpfully differentiate real estate properties, like square footage, would be useless for categorizing cars. *Id.* at col. 1 ll. 53–67. As a result, these specialty indices could not handle information about wide ranges of products and services. *Id.* While hierarchical indices could organize information about wide ranges of products and services by sorting them into distinct categories, these indices did not allow users "to select small subsets of records, and to sort the selected records, based upon parameters." *Id.* at col. 2 ll. 30–48.

The patents teach that the "self-evolving" aspect of the claimed invention addresses these shortcomings by enabling users to "add new parameters for use in describing items." *Id.* at col. 3 ll. 26–27. Although users are free to add any new parameter to the index, the claimed invention seeks to guide user inputs to maintain consistency in how different users describe items. To guide

users, the system provides them with information about parameters and values that previous users chose when describing similar items. *Id.* at col. 5 ll. 21–25. For instance, a user inputting information about a car could be presented with historical usage information showing that prior users commonly described car items using year, model, and price parameters. The usage information would include information about the relative frequency at which various parameters or values were used. *Id.* at col. 5 ll. 25–30.

The claims at issue are directed toward systems and methods of indexing that combine some or all of these features. In the Eastern District of Texas, BSG Tech sued BuySeasons for infringement of the '699, '294, and '652 patents. BSG Tech asserted four claims from the '699 patent. Claim 1 recites:

> A method of indexing and retrieving data being posted by a plurality of users to a wide area network, comprising:
>
> providing the users with a mechanism for posting the data as parametized items;
>
> providing the users with listings of previously used parameters and previously used values for use in posting the data;
>
> providing the users with summary comparison usage information corresponding to the previously used parameters and values for use in posting the data; and
>
> providing subsequent users with the listings of previously used parameters and values, and corresponding summary comparison usage information for use in searching the network for an item of interest.

'699 patent col. 10 l. 64–col. 11 l. 10.  Claims 2, 3, and 4 depend from claim 1 and further require, respectively, the user to add a new parameter, the user to add a new value, and providing the user with a classification system for use in posting data.  *Id.* at col. 11 l. 11–col. 12 l. 4.

BSG Tech also asserted claims 10 and 11 of the '294 patent.  Claim 10 recites:

> A method of indexing an item on a database, comprising:
>
> providing the database with a structure having a plurality of item classifications, parameters, and values, wherein individual parameters are independently related to individual item classifications, and individual values are independently related to individual parameters;
>
> guiding the user in selecting a specific item classification for the item from the plurality of item classifications;
>
> storing the item on the database as a plurality of user-selected item classification/parameter value combinations; and
>
> guiding the user in selecting at least one of (a) the parameters of the combinations by displaying relative historical usage information for a plurality of parameters previously used by other users, and (b) the values of the combinations by displaying relative historical usage information for a plurality of values previously used by other users.

'294 patent col. 11 ll. 38–56.  Claim 11 depends from claim 10 and further requires guiding the user by displaying relative historical usage information about previously used parameters and values with respect to a specific item classification.  *Id.* at col. 11 l. 57–col. 12 l. 8.

Last, BSG Tech asserted claim 9 of the '652 patent. Although similar to the other asserted claims, claim 9 covers a database system and recites a further limitation requiring that "end users can add additional parameters without modifying the predefined structure of the database." '652 patent col. 18 ll. 33–45.

BuySeasons moved to dismiss for failure to state a claim, arguing that all the asserted claims are drawn to patent-ineligible subject matter. After converting BuySeasons's motion to dismiss into a motion for summary judgment and accepting BSG Tech's proposed claim constructions for purposes of the motion, the district court granted BuySeasons's motion. The district court concluded that the asserted claims "are directed to the abstract idea of considering historical usage information while inputting data" and lack an inventive concept sufficient to transform them into patent-eligible subject matter. J.A. 6.

BSG Tech appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We review a grant of summary judgment under the law of the regional circuit. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Fifth Circuit reviews grants of summary judgment de novo. *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). "Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.*

The only issue in this appeal is whether the asserted claims are patent eligible under 35 U.S.C. § 101, which we review de novo. *Enfish*, 822 F.3d at 1334.

Section 101 provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." This provision contains an implicit exception that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012)). We determine whether a claim covers ineligible subject matter under § 101 through a two-step test. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). At step one, we "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, we consider at step two whether the elements of each claim, both individually and as an ordered combination, "'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 78).

A

The Supreme Court has held that "fundamental . . . practice[s] long prevalent in our system of commerce" are abstract ideas. *Alice*, 134 S. Ct. at 2356. Similarly, we view well-established "methods of organizing human activity" as abstract. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016). If a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step one. *Alice*, 134 S. Ct. at 2355–57. Software, however, "can make non-abstract improvements to computer technology just as hardware improvements can." *Enfish*, 822 F.3d at 1335. We must, therefore, consider whether the "focus of the claims" is on a "specific asserted improvement in computer capabilities . . . , or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336.

We agree with the district court that the asserted claims are directed to the abstract idea of considering historical usage information while inputting data. This is clearest for the four asserted claims of the '699 patent. Claim 1 of the '699 patent recites a method of indexing wherein a user adds data to a database using "a mechanism for posting the data as parametized items" after receiving "summary comparison usage information" about parameters and values selected by prior users. '699 patent col. 10 l. 64–col. 11 l. 10. BSG Tech does not purport to have invented database structures that allow database users to input item data as a series of parameters and values. The '699 specification makes clear that such databases predate the claimed invention. *Id.* at col. 1 l. 21–col. 3 l. 23, col. 10 ll. 42–46. Rather, the claim's "focus" is guiding database users by presenting summary comparison information to users before they input data. *Id.* at col. 3 ll. 36–51. This is not a method "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of" wide access databases. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). It amounts to having users consider previous item descriptions before they describe items to achieve more consistent item descriptions. Whether labeled as a fundamental, long-prevalent practice or a well-established method of organizing activity, this qualifies as an abstract idea. *See also Cyber-Source Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372–73 (Fed. Cir. 2011) (holding that a claim whose "steps can be performed in the human mind, or by a human using a pen and paper" is directed to an "unpatentable mental process[]").

BSG Tech makes three arguments for why the '699 patent claims are not directed to this abstract idea, none of which are persuasive. First, BSG Tech argues that the '699 patent claims require a specific database structure. The "mechanism for posting the data as parametized

items" limitation requires a database that allows users to input data and can store user-input data as classifications, parameters, and values. Some databases do not allow user input or cannot store information in this way. *See* '699 patent col. 1 ll. 22–34. It follows, BSG Tech argues, that the claims cannot be directed to abstract ideas because their limitations are not satisfied by a generic computer.

We have consistently held, however, that claims are not saved from abstraction merely because they recite components more specific than a generic computer. *See TLI Commc'ns*, 823 F.3d at 612–13 (holding claims were directed to an abstract idea despite the claims' recitation of telephone units and servers); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding claims were directed to an abstract idea despite the claims' recitation of a scanner). In *Content Extraction*, we observed that a limitation requiring part of the claimed method to be performed on a scanner merely limited the abstract idea to a particular technological environment. 776 F.3d at 1348. Similarly, in *TLI Communications*, the limitations requiring performance of the claimed method on a telephone unit and server "merely provide[d] a generic environment in which to carry out the abstract idea." 823 F.3d at 611. Here, the recited database structure similarly provides a generic environment in which the claimed method is performed. The '699 specification makes clear that databases allowing users to post parametized items were commonly used at the time of invention. '699 patent col. 1 l. 21–col. 3 l. 23. Thus, the recitation of a database structure slightly more detailed than a generic database does not save the asserted claims at step one.

Second, BSG Tech argues that the '699 patent claims are not directed to an abstract idea because they require users to specifically consider "summary comparison usage information" rather than any type of historical usage

information. This argument is unpersuasive. The '699 patent uses the term "summary comparison usage information" very broadly. Its specification states "'usage' is employed herein in its broadest possible sense to include information relating to occurrence, absolute or relative frequency, or any other data which indicates the extent of past usage with respect to the various choices." *Id.* at col. 5 ll. 32–36. Therefore, "summary comparison usage information" covers any information concerning the relative frequency at which different parameters and values have been used. This includes side-by-side displays of the absolute number of uses for different parameters or values. *Id.* at col. 5 ll. 58–62. In effect, any historical information about parameter or value usage qualifies as "summary comparison usage information" if it is presented alongside information about one or more other parameters or values.

Moreover, regardless of how narrow "summary comparison usage information" may be relative to the category of "historical usage information," this does not affect whether the claims are directed to an abstract idea at *Alice*'s step one. In BSG Tech's view, a claim is not directed to an abstract idea so long as it recites limitations that render it narrower than that abstract idea. While "we must be careful to avoid oversimplifying the claims" in determining whether they are directed to an abstract idea, *TLI Commc'ns*, 823 F.3d at 611, we have never suggested that such minimal narrowing, by itself, satisfies *Alice*'s test. In *Content Extraction*, for example, we determined that the claimed methods were directed, in part, to the abstract idea of "collecting data," even though the claims specifically concerned data from "hard copy documents" collected by an "automated digitizing unit." 776 F.3d at 1345, 1347. Similarly, in *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329 (Fed. Cir. 2017), we determined that a claimed method was directed, in part, to the abstract idea of

"sending information," even though the claim specifically concerned "audio/and or visual information" transmitted over a communications network. *Id.* at 1334, 1337–38. These cases reflect that a claim is not patent eligible merely because it applies an abstract idea in a narrow way. For an application of an abstract idea to satisfy step one, the claim's focus must be something other than the abstract idea itself.[1]

Third, BSG Tech insists that its claims focus on a non-abstract improvement in database functionality. It argues that the claimed invention improves the quality of information added to the database and the organization of information in the database. These improvements result from guiding users' selection of classifications, parameters, and values through displays of summary comparison usage information. The historical information "encourages users to be consistent in selecting parameters for both entering and searching data." '699 patent col. 3 ll. 43–45. As a result, the claimed invention "allows users to quickly and efficiently access hundreds of thousands or even millions of records, and still find only those few records that are relevant." *Id.* at col. 10 ll. 46–48.

These benefits, however, are not improvements to database functionality. Instead, they are benefits that

---

[1]    For this reason, whether dependent claims 2–4 of the '699 patent are directed to an abstract idea at step one depends upon whether independent claim 1 is directed to an abstract idea. The dependent claims' additional limitations require the user to add certain types of information to the database or require providing the user with a classification system to post data. '699 patent col. 11 l. 11–col. 12 l. 4. Although these claims cover a narrower range of data input than claim 1, the claims' focus remains on the abstract idea of considering historical usage information while inputting data.

flow from performing an abstract idea in conjunction with a well-known database structure. A review of our prior cases identifying claims directed to non-abstract improvements in computer functionality makes this clear. In *Enfish*, we determined that claims related to a database structure were not abstract because their focus included a new "self-referential table [that] functions differently than conventional database structures." 822 F.3d at 1337. The self-referential table enabled programmers to construct databases in new ways that required less modeling and configuring of various tables prior to launch. *Id.* at 1333. We expressly distinguished this kind of improvement in computer functionality from the performance of "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. Similarly, in *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017), we determined that the claims at issue were directed to an "improved memory system" that configured operational characteristics of a computer's cache memory based on the type of processor connected to the memory system. *Id.* at 1261. Depending on the processor type, the invention's memory caches could adjust their function, which allowed the claimed invention to accommodate different types of processors without compromising performance. *Id.* at 1256–57, 1259. Both *Enfish* and *Visual Memory* concerned claims that focused on improved ways in which systems store and access data.

Here, the focus of BSG Tech's claims is unrelated to how databases function. Under the claimed methods, information inputted by users into a database is stored and organized in the same manner as information inputted into conventional databases capable of indexing data as classifications, parameters, and values. The claims do not recite any improvement to the way in which such databases store or organize information analogous to the self-referential table in *Enfish* or the adaptable memory caches in *Visual Memory*. While the presentation

of summary comparison usage information to users improves the quality of the information added to the database, an improvement to the information stored by a database is not equivalent to an improvement in the database's functionality. BSG Tech's claimed invention results in better user input, but the database serves in its "ordinary capacity" of storing the resulting information. *Enfish*, 822 F.3d at 1336. Thus, at step one, the '699 patent claims are directed to the abstract idea of having users consider historical usage information while inputting data.

The foregoing analysis applies with equal force to claims 10 and 11 of the '294 patent. These claims also recite methods of indexing items in a database. For purposes of *Alice* step one, the '294 patent claims' recitation of a "database with a structure having a plurality of item classifications, parameters, and values" that can store "user-selected item classification/parameter value combinations," '294 patent col. 11 ll. 40–50, is equivalent to the '699 patent claims' recitation of "a mechanism for posting the data as parametized items." This conventional database structure similarly serves as a generic environment in which an abstract idea is carried out. *See TLI Commc'ns*, 823 F.3d at 611. Additionally, the step of the '294 patent claims that requires guiding users by displaying "relative historical usage information," '294 patent col. 11 ll. 50–56, is not materially different than the '699 patent's requirement that users be guided with "summary comparison usage information." BSG Tech does not point to any other features of the '294 patent claims that could support their eligibility at step one.

Finally, BSG Tech makes several arguments that are specific to claim 9 of the '652 patent. Unlike the method claims of the '699 and '294 patents, claim 9 of the '652 patent claims a database system. Nonetheless, it is similarly directed to the same abstract idea of considering historical usage information while inputting data. Like

the '294 patent claims, it requires a database structure that is capable of storing information about items as combinations of classifications, parameters, and values. '652 patent col. 18 ll. 33–45. And like the '699 patent claims, it requires guiding users by displaying "summary comparison usage information." *Id.* Claim 9's only distinguishing feature is a limitation requiring that database users "can add additional parameters without modifying the predefined structure of the database." *Id.*

BSG Tech argues that this latter limitation provides an independent reason that claim 9 of the '652 patent is not directed to an abstract idea. According to BSG Tech, this limitation further differentiates the claimed invention from generic databases because it recites a database that is not structurally modified when users add new parameters. As discussed previously, however, merely reciting components more specific than a generic computer does not preclude a claim from being directed to an abstract idea. *See TLI Commc'ns*, 823 F.3d at 611.

To the extent that BSG Tech argues that this limitation constitutes an improvement in computer functionality similar to the self-referential table in *Enfish*, there is no support for such an assertion. The '652 patent specification says nothing about how to construct a database structure that is not modified by the addition of new parameters. This suggests that this feature of the claimed system is not claim 9's focus. Relatedly, nothing in the specification suggests that conventional databases required structural modifications to add new parameters, or explains how maintaining the same structure would improve database functionality relative to structures that change with the addition of new parameters.

Further, BSG Tech argues that claim 9 covers an improved database system with higher quality information and better information organization. But BSG Tech alleges that the '699 and '294 patent claims achieve the

same benefits. The '699 and '294 patent claims do not require that additional parameters can be added to a database without modifying its structure. Accordingly, claim 9's benefits are similarly attributable to users considering historical usage information while inputting data. In short, we conclude that claim 9's limitation that users can add additional parameters without modifying the predefined structure of the database does not constitute an improvement in database functionality.

B

At step two, if claims are directed to a patent-ineligible concept, "we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 566 U.S. at 78–79). These transformative elements must supply an "inventive concept" that ensures the patent amounts to "significantly more than a patent upon the [ineligible concept] itself." *Id.* (quoting *Mayo*, 566 U.S. at 72–73) (alteration in original). Claim limitations that recite "conventional, routine and well understood applications in the art" are insufficient to "supply an inventive concept." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1378 (Fed. Cir. 2015).

Whether a combination of claim limitations supplies an inventive concept that renders a claim "significantly more" than an abstract idea to which it is directed is a question of law. Underlying factual determinations may inform this legal determination. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). We have recently held that whether a claim limitation or combination of limitations is well-understood, routine, and conventional is a factual question. *Id.* Accordingly, in cases where the only issue at step two is whether claim limitations are well-understood, routine, and conventional, a

genuine dispute over that issue will preclude summary judgment that a claim is ineligible under § 101. This was the case for some of the claims at issue in *Berkheimer*. In that case, certain claims recited non-abstract features of a digital asset management system that the specification described as unconventional improvements over conventional systems. *Id.* at 1370. While the *Berkheimer* defendant argued those features were conventional, there was a genuine issue of material fact in that case. *Id.* Under those circumstances, summary judgment was inappropriate. *Id.*

This case is different. BSG Tech points to the '699, '294, and '652 patent specifications to argue that the asserted claims recite unconventional features that provide benefits over conventional prior art databases. But the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine. At step two, we "search for an 'inventive concept' . . . that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (internal quotation marks omitted) (quoting *Mayo*, 566 U.S. at 72–73). After identifying an ineligible concept at step one, we ask at step two "[w]hat else is there in the claims before us?" *Mayo*, 566 U.S. at 78.

It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention "significantly more" than that ineligible concept. In *Alice*, the Supreme Court held that claims directed to a computer-implemented scheme for mitigating settlement risks claimed a patent-ineligible abstract idea. 134 S. Ct. at 2352, 2355–56. Some of the claims at issue covered computer systems configured to mitigate risks through various financial transactions. *Id.* After determining that those claims were directed to the abstract idea of intermediated settlement, the Court considered whether

the recitation of a generic computer added "significantly more" to the claims. *Id.* at 2357. Critically, the Court did not consider whether it was well-understood, routine, and conventional to execute the claimed intermediated settlement method on a generic computer. Instead, the Court only assessed whether the claim limitations other than the invention's use of the ineligible concept to which it was directed were well-understood, routine and conventional. *Id.* at 2359–60.

Our precedent has consistently employed this same approach. If a claim's only "inventive concept" is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea. *See, e.g., Berkheimer*, 881 F.3d at 1370 (holding claims lacked an inventive concept because they "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components"); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (holding a claim lacked an inventive concept because it "simply recites the use of generic features . . . as well as routine functions . . . to implement the underlying idea"); *cf. Ariosa*, 788 F.3d at 1379–80 (rejecting the argument that a newly discovered natural phenomenon can supply an inventive concept).

Here, the only alleged unconventional feature of BSG Tech's claims is the requirement that users are guided by summary comparison usage information or relative historical usage information. But this simply restates what we have already determined is an abstract idea. At *Alice* step two, it is irrelevant whether considering historical usage information while inputting data may have been non-routine or unconventional as a factual matter. As a matter of law, narrowing or reformulating an abstract idea does not add "significantly more" to it. *See SAP Am., Inc. v. InvestPic*, LLC, No. 2017-2081, slip op. at 14 (Fed. Cir. Aug. 2, 2018) ("What is needed is an inventive con-

cept in the non-abstract application realm. . . . [L]imitation of the claims to a particular field of information . . . does not move the claims out of the realm of abstract ideas."). BSG Tech does not argue that other, non-abstract features of the claimed inventions, alone or in combination, are not well-understood, routine and conventional database structures and activities. Accordingly, the district court did not err in determining that the asserted claims lack an inventive concept.

BSG Tech's remaining argument at step two is that the asserted claims supply an inventive concept because they require a specific database structure that does not preempt consideration of historical usage information while inputting data into other types of databases. This argument misunderstands the step two inquiry. While preemption concerns are "the basis for the judicial exceptions to patentability . . . , the absence of complete preemption does not demonstrate patent eligibility." *Ariosa*, 788 F.3d at 1379; *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1321 (Fed. Cir. 2016) ("A narrow claim directed to an abstract idea, however, is not necessarily patent-eligible . . . ."). Although BSG Tech narrowed its claims to specific database structures, those structures are well-understood and conventional. Such narrowing does not supply an inventive concept.

## III

Based on the foregoing, we affirm the district court's grant of summary judgment that all asserted claims on appeal are ineligible under § 101.

## AFFIRMED